ANNIE L. SLINGERLAND v. TEUNIS S. SLINGERLAND.[1]

July 28, 1911.

Nos. 17,126—(220).

**Antenuptial contract — fraud — decision sustained by findings.**

In an action to set aside an antenuptial contract on the grounds of

[1] Reported in 132 N. W. 326.

fraud and undue influence, it is *held* that the conclusions of law to the effect that plaintiff was entitled to judgment declaring such contract void are justified by the findings of fact.

Action in the district court for Dodge county to set aside an antenuptial contract. The substance of the answer is given in the opinion. The case was tried before Buckham, J., who made findings of fact and conclusions of law as stated in the opinion. From the judgment entered pursuant to the findings, defendant appealed. Affirmed.

*Norton & Norton, Lord & Ronken,* and *Brown, Abbott & Somsen,* for appellant.

*S. R. Child, Benjamin Drake, Lind, Ueland & Jerome,* and *Brooks & Jamison,* for respondent.

BUNN, J.

Plaintiff is the wife of defendant, and brought this action against him to set aside an antenuptial contract on the ground that she was induced to enter into such contract by fraud and undue influence. This contract provided that in consideration of defendant's promise to marry her, and his agreement to pay her $5,000 within a reasonable time after the marriage, plaintiff should be barred and estopped from any claim upon defendant's estate consequent upon such marriage and her surviving him. The complaint was held to state a cause of action in Slingerland v. Slingerland, 109 Minn. 407, 124 N. W. 19. After that decision defendant answered, admitting the execution of the contract, but denying fraud, and alleging that plaintiff was fully advised of the nature and purport thereof, and of the nature, extent, and value of defendant's property, and entered into the contract voluntarily. The answer also alleged that the contract was thereafter ratified and confirmed by plaintiff. The case was tried, and a decision rendered in favor of plaintiff. Pursuant to such decision, judgment was entered that the contract was null and void. Defendant appeals from this judgment.

The assignments of error present the question of whether the con-

clusions of law are justified by the findings of fact. These findings are in substance as follows:

Plaintiff and defendant were married June 18, 1890. Defendant was a widower sixty-seven years of age, and owned property worth $225,000, and was carrying on a prosperous business bringing in large profits. Plaintiff was twenty-three years of age and possessed of little property, except possibly two hundred forty acres of land, for which defendant had before that time made a deed to her, the delivery of which deed was a matter of dispute at the trial. For several years prior to the marriage plaintiff and defendant had maintained illicit sexual relations with each other, and at the time the contract was executed plaintiff was pregnant with child begotten by defendant. After she so became pregnant plaintiff greatly desired defendant to marry her, and urged him to do so. Defendant consented to such marriage, and with a view to the same plaintiff and defendant on May 20, 1890, went together to the office of defendant's confidential counsel in Winona, who at defendant's request had prepared the antenuptial contract in controversy and made three copies thereof ready for signature, and plaintiff and defendant then executed and acknowledged such contract. The nature of the contract was at this time explained to plaintiff by the attorney who had drawn it, its import was then understood by her, and she then knew that by its execution she would, in case she survived defendant, be excluded from any right in whatever property he might own at the time of his death in consideration of the sum of $5,000 to be paid to her as a condition of her executing such contract. Plaintiff then knew that defendant was wealthy and the owner of much valuable real estate and personal property, but was not informed by defendant as to the full amount of his property or as to the details of the same; nor was she informed of the exact nature or extent of the interest that she as a widow would be entitled to under the law in the property of which defendant might die seised nor did she make any inquiries as to these matters. Plaintiff executed the contract freely and without objection, and without urging on the part of defendant or his attorney; but she then was, owing to her condition and the fact that she had not been married to defendant, under considerable nervous

strain and greatly desirous of a marriage with defendant, as he then well knew, and had confidence in the good intentions of defendant and his affection for her. She had no person of business judgment and experience with whom to advise in reference to such contract. Shortly after its execution the marriage took place. Six children have been born to plaintiff and defendant, of whom four are now living, of the ages of nineteen, fifteen, seven, and five years, respectively. Defendant has never agreed to rescind the contract.

The court further found that the sum of $5,000 was inequitable and unreasonably disproportionate to the then pecuniary means of defendant, and the value of the prospective dower rights surrendered by plaintiff, and was so inadequate and unconscionable that a court of equity should refuse to enforce the contract and, further, that defendant had never paid plaintiff said $5,000, or any part thereof.

On the findings, the court made conclusions of law substantially as follows: Such contract was not invalid by reason of any actual deceit, fraudulent representations, or undue influence on the part of defendant or any other person. By reason of the inadequacy of the money consideration provided for in said contract, and the total failure of defendant to pay plaintiff such consideration, defendant is not entitled to enforce such contract, or to hold plaintiff barred of such interest in his estate as she may be entitled to in case she shall survive defendant. Plaintiff is entitled to judgment decreeing that such contract is null and void.

Are these conclusions of law justified by the facts as found? Defendant urges that they are not; that the facts furnish no ground for setting aside the contract, either as fraudulent or because of nonperformance.

We will first dispose of the question of fraud or undue influence. Defendant argues that the finding that plaintiff executed the contract with knowledge of its import freely, without any objection on her part, and without urging on the part of defendant, amounts to a finding that the contract was not procured by fraud, undue influence, or duress. But there may be undue influence or duress without ur-

gings, concealment, misrepresentations, or actual threats. The findings show the situation as it existed at the time the contract was signed. Was plaintiff acting of her own free will, or was she in reality acting in pursuance of the will of defendant? The case presents itself to us like this: A wealthy and successful man of mature years, a man of great influence and will power, induces a young girl to enter into illicit relations with him, which continue for several years. She becomes pregnant, and is naturally anxious for a marriage, so anxious in all probability as to make her forget the financial side and be willing to sign anything to gain the desired result. She knows he is rich, but does not know the extent of his wealth. He takes her to the office of his personal counsel, a lawyer of the highest standing, and of impressive appearance, who has prepared a contract for her to sign. She is informed of its import, and knows that she is giving up her rights in her prospective husband's estate after his death. She has no lawyer or friend to advise her. She is not informed as to the nature or extent of the rights she surrenders in return for the promise to pay her $5,000. She is under a nervous strain, very desirous for the marriage, and knows that it is necessary to sign the contract in order to attain this desire. These facts, without actual misrepresentations, urgings, or duress, are sufficient, in our opinion, to justify a conclusion that plaintiff's execution of the contract was not her own free act, but in reality the act of defendant done by her pursuant to his will.

The money consideration was pitifully inadequate. As said by the trial court, the sum of $5,000 was "grossly disproportionate, unreasonable, and unfair as a provision for a wife likely to outlive him many years." By this contract, if valid, defendant had it within his power to leave his wife practically penniless at his death, and without the means to support the children she might bear him. She has been his wife for twenty years, and four children of the marriage are living. The power to cast her and them from him, without a share of his great wealth, is abhorrent to every sense of justice, and equity should not be powerless to grant relief. True, mere inadequacy of consideration alone is not generally a ground for setting aside a contract. But it shows the unconscionable character of the

contract, and raises a presumption of fraud, which may be overcome by evidence. The relations between the parties were confidential. Clearly the burden rested upon defendant to overcome this presumption, to show there was no fraud or concealment, and that plaintiff knew the extent, character, and value of his property and the nature and extent of her rights as his wife and widow. This burden was not sustained by proof that plaintiff knew he was wealthy. The trial court expressly found that defendant "did not then or at any time prior thereto make her acquainted with the full amount of his property or the details of the same." It was his duty to inform her, as well as to advise her of the nature and extent of the interest in his estate that she was giving up. We think that the presumption arising from the gross inadequacy of the consideration was not overcome. Surely, taking this in connection with the relations of the parties and the circumstances surrounding the making of the contract, the evidence is ample to sustain the conclusion reached by the trial court.

Defendant argues that the presumption of fraud from the inadequacy of the consideration does not arise in this case, because plaintiff "greatly desired to be made his lawful wife and urged him to marry her," in order to save herself and her unborn child from dishonor. In other words, because plaintiff was the moving party, and obtained what she so much desired, equity should not consider the inadequacy of the sum she agreed to take as a "substitute" for her rights in defendant's property. We cannot look at the case in this way. Defendant was not trapped into the marriage, nor was he simply making reparation for the wrong done plaintiff. He was making her his wife, the companion of his declining years, the mother of his children. When a case arises of the designing woman and the innocent man, it will be time enough to apply the argument made by defendant. We are unable to see the suggested commercialism or dire consequences involved in the ruling that this plaintiff is entitled to her lawful rights as defendant's wife.

In view of our decision on the question of fraud and undue influence, it is unnecessary to decide whether defendant's failure to pay the $5,000 is alone a ground for setting the contract aside.

After the action was commenced, defendant settled in trust certain property for the use and benefit of plaintiff in case she survived him. We agree with the learned trial court that this was wholly immaterial. It could not affect plaintiff's right to insist that the contract should be set aside.

The facts, in our opinion, amply sustain the conclusions of law reached by the trial court.

Judgment affirmed.