Margaret H. RANDLETT

v.

Yeaton D. RANDLETT.

Supreme Judicial Court of Maine.

May 31, 1979.

Grossman, Faber & Miller by Barry M. Faber, (orally), Rockland, for plaintiff.

Eaton, Glass & Marsano by Francis C. Marsano, (orally), Belfast, for defendant.

Before WERNICK, ARCHIBALD, DE-LAHANTY and GODFREY, JJ.

DELAHANTY, Justice.

This appeal raises the question of the propriety of a declaratory judgment, to be entered during the lives of the spouses, which would decide whether a separation agreement negotiated by the parties and incorporated into their divorce decree will obligate the defendant-husband's estate to continue making alimony payments to the plaintiff-wife in the event that she survives him. Since we conclude, contrary to the rulings of the courts below, that a justiciable controversy exists, we sustain the appeal and remand the case for further consideration on the merits.

By a decree entered April 2, 1976, the District Court granted the plaintiff a divorce from the defendant on the ground of cruel and abusive treatment. The separation agreement which the parties had negotiated was made a part of the decree by reference. Paragraph 2D of the agreement obligated the defendant to pay $150.00 per week "so long as [the plaintiff] remains unmarried and alive."

On January 14, 1977, the defendant moved pursuant to M.R.Civ.P. 80(j) to modify the divorce judgment to provide that his obligation to pay alimony would cease upon his death. After a hearing, the District Court, on April 1, 1977, denied the motion on the ground that "no change of circumstances [had] occurred since [the] date of [the divorce] judgment." One week later, the defendant moved pursuant to M.R. Civ.P. 59(e) to alter or amend the April 1 order. Coupled with this motion and filed on the same day was a complaint seeking a declaratory judgment made in accordance with District Court Civil Rule 57 and the Uniform Declaratory Judgments Act, codified at 14 M.R.S.A. §§ 5951–5963. As was true of the January 14 motion, the complaint stated that the defendant interpreted the agreement to mean that his obligation to pay alimony would cease at the time of his death. The complaint went on to state that the plaintiff had orally declared to the defendant that she interpreted the agreement differently: In her view, the obligation would survive the decease of the defendant.

After hearing oral argument, the District Court denied both the motion and the request for declaratory relief citing the following reasons:

· There has been no change in circumstances of the parties since the date of the divorce judgment of April 2, 1976, and no other basis on which to base any alteration or amendment of said judgment.

There is no justiciable controversy between the parties on which a declaratory judgment may legally be issued.

Several contingencies may in the future occur to affect the legal relationship of the parties with respect to the liability of the defendant under the divorce judgment of April 2, 1976:

   (1) Margaret H. Randlett may marry before the death of Yeaton D. Randlett;

   (2) Margaret H. Randlett, while still unmarried, may predecease Yeaton D. Randlett;

(3) Margaret H. Randlett may marry after the death of Yeaton D. Randlett.

The question of necessary construction of a judgment and contract (made a part of the judgment by reference) may never arise because of the noted contingencies affecting rights of the parties.

A declaratory judgment entered now would not be dealing with a current real controversay [sic].

Noting its agreement with the decision of the District Court, the Superior Court, Waldo County, denied the ensuing appeal on March 29, 1978. This appeal followed.

■■ It is clear that by statute, 14 M.R.S.A. § 5953, and rule, D.C.Civ.R. 57, the District Court is empowered to grant declaratory relief in appropriate circumstances. That established, we reach the question of whether the court could issue a declaratory judgment in this instance. It is important to note that the District Court's decree incorporated by reference the parties' separation agreement and thus transformed the agreement into a judgment of that court. See *Lindsley v. Lindsley*, Me., 374 A.2d 311, 316–17 (1977); *Coe v. Coe*, 145 Me. 71, 71 A.2d 514 (1950).

So postured, we confront the question of whether a litigant is entitled to seek declaratory relief to clarify the terms of a prior judgment. Although jurisdictions are divided over this question as a general proposition, *compare Mills v. Mills,* 512 P.2d 143 (Okl.1973), *and Speaker v. Lawler,* 463 S.W.2d 741 (Tex.Civ.App.1971), *with Meeks v. Town of Hoover,* 286 Ala. 373, 240 So.2d 125 (1970), *Minne v. City of Mishawaka,* 251 Ind. 166, 240 N.E.2d 56 (1968), *and National-Ben Franklin Fire Insurance Co. v. Camden Trust Co.,* 36 N.J.Super. 249, 115 A.2d 589 (1955), we find that on the facts of this case declaratory relief was properly invoked.

We note that recent decisions of this Court demonstrate that decrees attempting to regulate the future conduct of parties often reveal themselves to be susceptible to varying interpretations. Where an honest disagreement as to the meaning of a decree surfaces, the aggrieved party frequently turns to the rendering court and asks for a clarification of the decree. By doing so, the party does not seek to retry the facts of the case or to reverse the court's decision. This can only be accomplished by appeal or under M.R.Civ.P. 59. Rather, the party merely wants to know what is expected of him under the court's decree. In such cases, allowing a court the power to render a clarification would appear to be sound public policy since the only other way a litigant could test the meaning of a decree would be to proceed on his chosen course of action at the risk of being held in contempt.

■ The recent decisions alluded to above indicate that a court has the authority to make clear the meaning of a prior decree where necessary to guide the conduct of the parties. Thus, in *Boothbay Harbor Condominium I v. Whitten,* Me., 387 A.2d 1117, 1120 (1978), where a disagreement arose over the question of whether the defendant had properly complied with a Superior Court equity decree, we affirmed the Superior Court's subsequent clarification of its decree citing the principle that "[a] court of general jurisdiction has inherent power to construe its judgments . . ." Similarly, in *Knight v. Knight,* Me., 387 A.2d 603, 604 05 (1978), we held that the Superior Court could competently declare the rights of the parties under an ambiguous District Court decree. Although in the *Boothbay Harbor* and *Knight* cases the moving parties selected somewhat different procedural avenues from the one pursued in this case, we see nothing inappropriate in the defendant's selection here of the declaratory remedy.[1] Indeed, other jurisdictions

---

1. It would seem that a complaint for declaratory relief would have been an appropriate device in all three cases. In *Boothbay Harbor,* for example, we pointed out that M.R.Civ.P. 59 was inapplicable since the court made no substantive change in its decree but instead merely clarified its meaning. 387 A.2d at 1119 20.

The procedural vehicle used by the parties in that case, M.R.Civ.P. 70, was not squarely implicated since, as we pointed out, the court properly refrained from ordering any immediate action. *Id.* In the truest sense, the relief granted was wholly declaratory.

have given their sanction to the practice under similar circumstances. *Putnam v. Putnam,* 51 Cal.App.2d 696, 125 P.2d 525 (1942); *Roberts v. Roberts,* 90 Ill.App.2d 184, 234 N.E.2d 372 (1967); *Beach v. Beach,* 57 Ohio App. 294, 13 N.E.2d 581 (1937).

■ The District Court denied relief in this case on the ground that there existed "no justiciable controversy between the parties on which a declaratory judgment may legally be issued." It is clear that the court based its decision on the principle that a party seeking declaratory relief must establish that his case constitutes an "active dispute of real interests between the litigants." *Berry v. Daigle,* Me., 322 A.2d 320, 325 (1974); *Allstate Insurance Co. v. Lyons,* Me., 400 A.2d 349 (1979); *Maine Turnpike Authority v. Brennan,* Me., 342 A.2d 719, 723 (1975); *Shapiro Brothers Shoe Co. v. Lewiston-Auburn Shoeworkers Protective Ass'n,* Me., 320 A.2d 247, 251 n.7 (1974). We find that the case at bar presents an "active dispute."

Preliminarily, we note that under 14 M.R. S.A. § 5951 the courts are directed to interpret and construe the Uniform Declaratory Judgments Act (the Act) "[so] as to effectuate [its] general purpose to make uniform the law of those states [enacting the Act]." In that connection, it is significant that the majority of cases that have considered the justiciability of this type of claim have held the granting of declaratory relief proper. *See* Annot., 80 A.L.R.2d 941 (1961).

In *Roberts v. Roberts, supra,* the plaintiff made use of the Act to attack the provisions of a settlement agreement, later incorporated into the parties' divorce decree, which called for weekly installment payments on a lump sum in lieu of alimony. The plaintiff contended that a term of the agreement/decree which provided that the defendant could stop payments in the event of the plaintiff's death or remarriage violated a state statute as well as public policy. Although, as the court put it, the plaintiff made "no allegation that [she] is contemplating remarriage [or] that she is suffering from an incurable terminal disease . . ,"

it nevertheless upheld the granting of declaratory relief. 90 Ill.App.2d at 187, 234 N.E.2d at 374.

We believe that there is an actual controversy in the instant case. There are adverse legal interests. Although no wrong has yet been committed, such is not necessary to obtain declaratory relief. The mere existence of a claim, assertion or challenge to plaintiff's legal interests, in which the ripening seeds of litigation may be seen and which cast doubt, insecurity, and uncertainty upon plaintiff's rights or status damages plaintiff's pecuniary or material interests and establishes a condition of justiciability. *Id.* at 187, 234 N.E.2d at 374.

In so holding, the court relied upon *Trossman v. Trossman,* 24 Ill.App.2d 521, 165 N.E.2d 368 (1960), where the defendant-wife had announced her intention to seek dower and an intestate share of the plaintiff-husband's estate in the event that he predeceased her, notwithstanding an antenuptial agreement, executed by both parties, in which each waived all rights in the estate of the other. The court, again construing the Act, found that the case presented "an actual controversy, definite and concrete," *id.* at 532, 165 N.E.2d at 374, and held that a declaratory judgment should issue. The *Trossman* court's statement that the declaratory remedy " 'is one to be employed in the interests of preventative justice and its scope should be kept wide and liberal . . . ,' " *id.* at 525, 165 N.E.2d at 370, *quoting* Notes, Ill.Ann.Stat. ch. 110, § 57.1 (Smith Hurd) (19—), has been echoed in numerous decisions of this court. *E. g., Maine Turnpike Authority v. Brennan, supra* at 723; *Berry v. Daigle, supra* at 325. Precisely on point with the *Trossman* case is *Moore v. Moore,* 344 Pa. 324, 25 A.2d 130 (1942), where the same Act we now construe was held to authorize declaratory relief. *But see contra Skowron v. Skowron,* 259 Wis. 17, 47 N.W.2d 326 (1951).

The considerations that motivated the *Trossman* and *Moore* courts to grant declaratory relief remain largely intact today.

Both courts put forth the telling point that where a spouse, or former spouse, announces an intention to assert a colorable claim against the other's estate, the party against whom the claim is lodged cannot plan his or her estate with any degree of certainty. *See Trossman,* 24 Ill.App. 2d at 528, 165 N.E.2d at 372, and *Moore,* 344 Pa. at 328, 25 A.2d at 132. Thus, in the instant case, the defendant is entitled to know whether he must set aside a corpus large enough to insure that the regular payments to the plaintiff of $150.00 per week will continue for an indefinite period after his death. A declaratory judgment issued now will have the present, immediate, and salutary effect of allowing the defendant to evolve an estate plan free of the uncertainty generated by the plaintiff's claim.

Another cogent argument advanced by the *Trossman* court held that it was prudent to resolve the matter now before death and the Dead Man's statute intervened to silence both parties to the contract. *Trossman, supra,* 24 Ill.App.2d at 532, 165 N.E.2d at 374; *see also Slingerland v. Slingerland,* 109 Minn. 407, 410, 124 N.W. 19, 20 (1910). Although our Legislature has eliminated a part of this rationale by repealing Maine's Dead Man's statute, it has no control over the other. The plaintiff's brief clearly indicates an intention to rely on certain statements made by the defendant to the effect that the weekly payments would continue after his death. If these statements are eventually ruled admissible, and we intimate no opinion on that issue, the defendant should be given the opportunity to deny or explain them.

The fact that a decision will be of immediate use to the parties and that arguably important evidence can be preserved has in the past motivated this Court to sanction declaratory relief in analogous circumstanc-

es. Most instructive in this regard is *Ziehl v. Maine National Bank,* Me., 383 A.2d 1364 (1978). In that case, the plaintiff was the adopted daughter of Sylvia Rhodes Ziehl, who in turn was the beneficiary of two testamentary trusts. The operative wills provided that upon the death of Sylvia Rhodes Ziehl the corpora of the trusts were to be divided equally among Sylvia's *then-living* children. Although the plaintiff's interest was subject to complete divestment in the event that she predeceased her mother, we sustained the granting of declaratory relief. We observed that an immediate decision in her favor would establish the plaintiff as a holder of a contingent remainder estate and entitle her to ensure the enforcement of the provisions of the trusts. We also emphasized that by trying the issues at once the parties could avoid " 'the risk of a great injustice which might conceivably result if the court were compelled to act years hence in an evidentiary vacuum.' " *Id.* at 1368, *quoting Gannett v. Old Colony Trust Co.,* 155 Me. 248, 251, 153 A.2d 122, 124 (1959). These same considerations again lead us to conclude that declaratory relief ought be made available.

The entry is:

Appeal sustained.

Case remanded to the Superior Court with instructions to remand to the District Court for proceedings consistent with this opinion.

McKUSICK, C. J., and POMEROY and NICHOLS, JJ., did not sit.